## S97Y2013. IN THE MATTER OF HILLARD J. QUINT.
### (492 SE2d 663)

PER CURIAM.

This disciplinary matter which began as a Petition for Emergency Suspension pursuant to Bar Rule 4-108, to which Respondent Hillard J. Quint consented, is now before the court on Quint's Petition for Voluntary Surrender of License which the State Bar requests this Court accept. Based on the serious violations and substantial harm to his clients which Quint admits, we accept his Petition for Voluntary Surrender of License, which he concedes is tantamount to disbarment.

In his Petition, Quint admits to violating Standards 4 (professional conduct involving fraud, deceit or wilful misrepresentation) and 65 (commingling client funds with his own, and failure to account for trust property) of Bar Rule 4-102 in connection with two cases. In the first case, he agreed to represent two individuals and their company in claims against a municipality. The clients signed a fee contract and paid Quint a total of $30,000 for legal fees and $5,000 for litigation expenses. Quint filed a lawsuit on the clients' behalf in Federal District Court and showed them a copy of a proposed Temporary Restraining Order as well as a copy of a $10,000 check he purportedly transmitted to the court Clerk. He told the clients that the court required the $10,000 as a bond for the TRO, that he had written the Clerk a check for that amount from his escrow account, and that the clients needed to reimburse him immediately. At Quint's direction, the clients paid $10,000 into Quint's escrow account. After a hearing before the U. S. District Judge, Quint falsely told the clients that the Judge had required both parties to post bond and that he had written a $5,000 check from his escrow account for that purpose. Quint requested that the clients reimburse him that amount immediately, which they did. Thereafter, he falsely told the clients that the court had set a hearing in the case, and that the defendants' attorney had agreed to submit the case to "mediation"

and to enter a "high-low agreement," with the low figure being one million dollars.[1] The clients then went to the U. S. District Court to look at the case file and asked about the $15,000 they purportedly posted as bond funds. They learned that no bond had been posted on their behalf, and that the court had not set a hearing, but had ordered Quint to do certain work which Quint had not done. Thereafter the clients learned that Quint had not discussed a high-low agreement with defense counsel, nor had the defendants agreed to submit to mediation. The clients promptly fired Quint, demanding a full accounting of all funds entrusted to him. Quint returned $20,000 and used the remaining $30,000 for his personal use, but maintains that he earned a portion of that latter amount.

In the second case, Quint represented a couple and their minor child in claims against the county school system and the couple paid him a $15,000 retainer. He told the couple that he would contact the County School System, the U. S. Office of Civil Rights in the U. S. Department of Health and Human Services, and the County District Attorney's office. Shortly thereafter he informed the clients that he had set an appointment with a representative of the Office of Civil Rights for two days later, but then called the clients and canceled the appointment, telling them that the representative of the Office of Civil Rights had postponed the appointment because she had not received documentation from the County School System. Several days later, Quint told the clients that he had spoken with an attorney for the County School System who indicated that the School System wanted to enter into a "binding high-low mediation"[2] and settle the claims before a lawsuit. Quint further told the clients that federal law required participants in such "mediation" to deposit ten percent of the high-low agreement in their attorney's escrow account, that the School System had agreed to a high-low of $200,000/$450,000, which, he later told them, they modified to $200,000/$400,000, and that the clients would need to deposit $25,000 into Quint's escrow account to show their good faith in the "mediation." The clients deposited $11,000 into Quint's escrow account. Thereafter, Quint told

---

[1] The court is constrained to observe that Quint's statement to his clients in this connection is patently deceptive. A high-low agreement is completely inconsistent with an agreement to mediate: "Mediation is a process in which a neutral facilitates settlement discussions between parties. *The neutral has no authority to make a decision or impose a settlement upon the parties.* The neutral attempts to focus the attention of the parties upon their needs and interests rather than upon rights and positions . . . *any settlement is entirely voluntary.* In the absence of settlement the parties lose none of their rights to a jury trial." (Emphasis supplied.) Alternative Dispute Resolution Rules, I. See Ga. Ct. & Bar Rules, p. 15-1.

[2] As discussed in fn. 1, supra, Quint's statement to these clients was also facially deceptive. Based upon the definition of mediation, the term "binding high-low mediation" is an oxymoron.

the clients that he had communicated a modified demand to the School System, that the School System had agreed to modify the "binding high-low mediation" agreement to $350,000/$450,000, and that the clients would need to deposit an additional $10,000 into Quint's escrow account. The clients deposited $14,000 into Quint's escrow account and Quint continued to assure them that the "binding high-low mediation" would occur within a matter of weeks. Shortly thereafter, the clients obtained a loan for $10,000 which they transferred into Quint's escrow account. Soon afterwards, the clients learned that Quint had made withdrawals from his escrow account and that the balance remaining was only $11,000. The clients talked with Quint, and he told them he would produce a written accounting of their funds that day. When Quint failed to produce the promised written accounting, the clients fired him and hired another attorney. Thereafter, the clients learned Quint had never contacted the County School System, the U. S. Office of Civil Rights in the U. S. Department of Health and Human Services, nor the County District Attorney's office. About a week after the clients fired him, and after their new lawyer demanded he return the $50,000 they had entrusted to him, Quint returned $10,000, but failed to return the remaining $40,000, which he used for personal purposes.

Quint admits his conduct violated Standards 4 and 65, and that the appropriate discipline to be imposed is the voluntary surrender of his license to practice law, which he acknowledges is tantamount to disbarment under Bar Rule 4-110 (f). In light of the serious nature of his offenses, and the substantial harm caused his clients, disbarment is the appropriate sanction. Accordingly, we accept Hillard J. Quint's petition for the voluntary surrender of his license and order that he certify to this Court that he has taken all actions necessary to protect the interests of his clients and has satisfied all the requirements of Bar Rule 4-219 (c).

*Voluntary surrender of license accepted. All the Justices concur.*

DECIDED NOVEMBER 17, 1997.

*William P. Smith III, General Counsel State Bar, K. Gene Chapman, Assistant General Counsel State Bar,* for State Bar of Georgia.